BYRNES, Judge.
The defendant, Clifton Harrison, was indicted by a grand jury for second degree murder under LSA-R.S. 14:30.1. On October 19 and 20, 1982 the defendant stood trial and was found guilty as charged by a jury of twelve. On December 2, 1982 he was sentenced to life in prison without benefit of parole, probation, or suspension of sentence.
FACTS
Clifton Harrison, the defendant, and his wife Margaret had been having marital difficulties. On the morning of July 15, 1982, defendant asked his mother if he could *70 borrow her car to check on his house and see if his wife had returned home (he had spent the previous night at his mother’s). His mother lent him her rose-colored Cadillac.
Later that afternoon, on the Newcomb College Campus, at approximately 5:00 P.M. Stephen Christo, a Tulane University graduate student, heard a gunshot. Mr. Christo turned and saw a black male wearing dark trousers and a white jacket standing over the body of a woman. The man saw Christo and began running down New-comb Circle towards Willow Street. At trial, Christo identified Harrison as the man he saw on that day.
Philip Elzey, a campus security guard, received a call about the incident. As he was riding in his security car towards the scene he spotted a black male wearing dark pants and a white jacket running down Newcomb Place toward Willow Street. The subject was entering a rose-colored Cadillac. As Elzey pulled up behind the Cadillac the man looked back, saw Elzey, raised his hands as if surrendering, then suddenly pulled away and fled. Elzey called in the license number on the Cadillac and proceeded to check on the victim. El-zey identified the man he saw as Harrison, both in a photo lineup and at trial.
Defendant’s mother testified that later that evening Harrison telephoned her and told her that he had shot his wife and he did not know if she was dead or alive. At approximately 3:00 a.m. on July 16, 1982 Harrison’s brother accompanied him to the precinct police station and Clifton Harrison turned himself in.
While at the station Harrison was read his Miranda rights and questioned by Detective Donald Curóle. The defendant then gave a statement.
At trial, the defendant testified that he was to meet his wife at her place of employment on the afternoon of July 15, 1982. He stated that after they met, an argument ensued, his wife pulled out a gun, and she was shot during a scuffle. He stated that she released the gun into his hand as she fell to the ground. Not knowing what to do, he panicked and fled.
The only othér evidence offered on Harrison’s behalf was the testimony of Charles Harrison, the defendant’s brother. He testified as to his brother’s emotional state on the day of the shooting and at the police station the following morning. He also testified that his brother’s statement in court was consistent with what he had told him about the shooting.
The state offered the testimony of Chris-to, Elzey, Curóle, and the defendant’s mother. Further, it introduced photographs of the victim, the spent bullet casing, and the bullet which killed Margaret Harrison.
After deliberating for less than two hours, the jury returned a verdict finding the defendant guilty of second degree murder.
The record reveals no errors patent.
ASSIGNMENTS OF ERROR
Defendant makes two assignments of error. He contends: 1) that the trial court erred in denying his motion to suppress the inculpatory statement he made at the police station; and 2) that the trial court erred in denying defendant’s motion for Post Verdict Judgment of Acquittal.
MOTION TO SUPPRESS
By this assignment the defendant contends that he did not voluntarily waive his Miranda rights because he was too emotionally distraught at the time of the arrest.
It is well settled that when introducing an inculpatory statement into evidence the state bears the burden of proving that the statement was given freely and voluntarily and that no pressure was put on the defendant to make the statement. La.R.S. 15:451; See also State v. Neslo, 433 So.2d 73 (La.1983) and State v. White, 399 So.2d 172 (La.1981). Further, where, as here, the defendant alleges that the statement was not free and voluntary the state has the burden of rebutting these allega *71 tions. State v. Neslo, supra. See also State v. Burkhalter, 428 So.2d 449 (La.1983). Finally, “in reviewing the trial judge’s ruling on admissibility, his conclusions as to credibility of witnesses are accorded great weight on appeal.” State v. Neslo, supra at 80.
In the case at bar the record shows that the defendant surrendered to police, accompanied by his brother, on July 16, 1982. At that point Detective Donald Cu-róle read the defendant his rights and asked him to review the form and sign it if he understood. The defendant indicated that he did understand and proceeded to sign the form. The detective then took the defendant’s statement.
Detective Curóle testified that while the defendant did begin to cry while making the statement he did not appear to be disoriented or under the influence of drugs or alcohol. Further, Detective Curóle stated that he did not use any physical coercion or promises to induce the defendant into making a statement. Finally, he testified that the statement was promptly terminated when the defendant requested an attorney.
The defendant and his brother both testified that the defendant was upset and crying while he was at the police station. The defendant testified further that he was unable to concentrate when asked questions and that he was too emotionally upset to make any rational judgments. He did not allege any acts of physical coercion or any other form of inducement which may have forced him to make a statement.
It is clear from the record before us that the trial judge gave more weight to the state’s witness at the suppression hearing. In light of the foregoing facts and the jurisprudence we cannot say that the ruling allowing the inculpatory statement into evidence was an abuse of discretion.
SUFFICIENCY OF THE EVIDENCE
By defendant’s second assignment of error he contends that the trial court erred in denying his motion for a post verdict judgment of acquittal under C.Cr.P. Art. 821. Under this article the acquittal may be granted if the evidence, when viewed in the light most favorable to the state, does not reasonably support a verdict of guilty. Hence, the standard of review is similar to that stated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and adopted by Louisiana in State v. Edwards, 400 So.2d 1370 (La.1982). In the instant ease, we must also exclude every reasonable hypothesis of innocence as the state’s case is comprised primarily of circumstantial evidence. State v. Shapiro, 431 So.2d 372 (La.1983).
There is eyewitness testimony which placed the defendant at the scene of the murder. Although he was not seen actually pulling the trigger, the fact that he fled the scene, was driving his mother’s car which she lent him that morning, and confessed shooting his wife to his mother, all support a verdict of guilty. Further, he could not explain how his wife was shot in the face at close range during the alleged struggle.
We find that the elements of the crime were proven beyond a reasonable doubt in accordance with La.C.Cr.P. Art. 821, R.S. 15:438, Jackson v. Virginia, supra, and State v. Shapiro, supra.
Accordingly, the trial court properly denied defendant’s motion for Post Verdict Judgment of Acquittal.
For the foregoing reasons defendant’s conviction and sentence are affirmed.
AFFIRMED.