384 So.2d 347 (1980)
STATE of Louisiana
v.
Dannye K. TELFORD.
No. 66187.
Supreme Court of Louisiana.
May 19, 1980.
Rehearing Denied June 23, 1980.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Tommy J. Adkins, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., for plaintiff-appellee.
Armand F. Rabun, Rabun & Post, Farmerville, for defendant-appellant.
GAUTHIER, Justice ad hoc.
The defendant Dannye K. Telford was indicted by a grand jury for negligent homicide in violation of La.R.S. 14:32. After a trial by jury, he was convicted and sentenced to two (2) years imprisonment in the parish jail, subject to public work. Defendant assigns two errors allegedly committed *348 by the trial court as the basis for this appeal.[1]
On the evening of November 3, 1977, at approximately 11:00 p. m., the defendant was driving his pickup truck on U. S. Highway 167. An "18 wheeler" gravel truck, operated by Calvin Johnson, was approaching from the opposite direction and the two vehicles collided. The Telford vehicle continued forward, crossing the road, coming to rest just off the pavement some distance on from the point of impact. Officers who investigated the accident determined that the point of impact was about two feet across the center line of the lane in which Calvin Johnson had been traveling. The Johnson vehicle swerved to the shoulder after impact and overturned coming to rest partially on and partially off the road, upside down, with the driver's side of the cab crushed in. Another automobile came along a few minutes later, skidded in the loose gravel, and struck the rear of the loadbed of the gravel truck.
Calvin Johnson was found pinned in the driver's seat and was pronounced dead at the scene. The police officers determined that Telford was the driver of the pickup truck involved. He was arrested at the scene when officers noted that he appeared to be intoxicated. Defendant was subsequently indicted for negligent homicide, tried, convicted and sentenced as above described.
ASSIGNMENT OF ERROR NO. 2
The defense contends that the trial court was in error in granting a recess of the trial.
Following numerous continuances,[2] defendant's trial was finally begun on July 17, 1979. The state elicited testimony from Officers Stephens and Thomas, who investigated the accident, that defendant's pickup truck had been the cause of the accident and that Telford had been present at the scene of the accident shortly after it had occurred. Joseph Pennington, another state witness, testified that he had seen the defendant driving the vehicle. However, on cross-examination, he admitted that he had not seen Telford actually operating the vehicle, but rather had seen him near the truck immediately after the accident. Defense counsel cross-examined both the officers and Pennington as to whether they had seen another individual at the scene of the accident.
The tenor of his cross-examination and objections suggested that the defense was attempting to establish that another person had been in the Telford vehicle at the time of the accident, thereby implying that this person, and not the defendant, had been the driver of the truck. The actual identity of this unknown person was revealed during the cross-examination of Officer Thomas. The state suspecting that the said Michael Grafton was a passenger in the pickup at the time of the accident, then caused an instanter subpoena to be issued commanding his appearance in court for 3:15 p. m. that day.
After Officer Thomas had testified, the state called Farmerville Police Officer George L. Cothran, and attempted to examine him about statements allegedly made by Telford at the scene of the accident. The defense objected on the ground that the alleged statements were inculpatory and the state had not revealed its intention to *349 use these statements in response to defendant's discovery motion. The jury was removed and the state continued its examination. Cothran testified that the defendant had threatened to "get" him and another officer when the investigation was completed, and that Telford asked why they were doing this to himthat it was just "as much his (Johnson's) fault as mine."
The trial judge then ruled that the statements allegedly made by the defendant were in fact inculpatory, and since notice had not been provided to the defense in answer to the Motion for Discovery, they were inadmissible. Immediately after this ruling the state requested a brief recess which was granted.
The state contends that during the recess they sought the whereabouts of Michael Grafton, and when it was discovered that he could not reach court until approximately 4:15 p. m., a further recess was sought until the following morning.[3] The state candidly admits realizing then that they had failed to establish that Telford was driving the vehicle that caused the accident, and moved for the recess referred to above.
When court reconvened the defense argued against the recess, alleging that it was now 3:30 p. m. and that the trial could be concluded by 5:00 p. m. The trial judge granted the recess over the defense's objection until 9:00 a. m. the next morning, commenting that it had previously agreed to conclude the court proceeding early on this date so that defense counsel could make a 5:30 p. m. engagement.
The following morning Grafton appeared in court and testified that Telford had been the driver of the vehicle at the time of the accident. The remainder of his testimony centered around his opinion as to defendant's sobriety and manner of driving, most of which was exculpatory in nature.
La.C.Cr.P. Art. 708 defines a recess as a temporary adjournment of a trial or hearing that occurs after the trial has commenced. The granting of a recess, like that of a continuance, is a matter within the sound discretion of the trial court, and will not be reversed by this Court in the absence of a showing of an abuse of discretion by the trial judge. State v. Charles, 350 So.2d 595 (La.1977); State v. Sharp, 321 So.2d 331 (La.1975). This discretion is allowed in order to ensure that the proceedings are conducted with dignity and in an orderly and expeditious manner, so as to see that justice is done. See State v. Humphreys, 319 So.2d 344 (La.1975).
In the case at bar the state was faced with the realization that there was a lack of direct evidence to identify the defendant as the actual driver of the pickup truck. A witness, Michael Grafton, had been found who could possibly resolve the identity issue and whose attendance at trial could be obtained. In addition, there had been an advance agreement by the trial judge with counsel for the defendant that the trial would not continue into the evening since defense counsel had a 5:30 p. m. engagement. In effect, the recess granted was for only one and one-half to two hours.[4]
Under these circumstances it cannot be said that the trial court abused its discretion in granting the state's request for a recess. The defendant made no showing, beyond the mere assertion that another witness was permitted to testify, as to how he was prejudiced. In fact, the bulk of Grafton's testimony, if believed by the jury, would have tendered to exculpate Telford, for he testified that the defendant was not drunk, was not staggering, was not speeding, did not cross the center line and did not go into the other lane of traffic.
In balancing the search for the truth and the need for full development of facts at a trial, with the prejudicial effects which might have accrued to the defendant, we find that the recess was properly granted.
The assignment of error is without merit.
*350 ASSIGNMENT OF ERROR NO. 3
The defense contends that the trial court committed error in refusing to give the following requested special charge explaining the presumptive negligence clause[5] of La.R.S. 14:32:
"The provision in the negligent homicide statute to the effect that the violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence, meaning criminal negligence, does not change the rule as to the presumption of innocence or place any affirmative burden upon the accused. The presumption provided in this statute does not in any way destroy the basic presumption of innocence of the accused. In a negligent homicide case, if the State makes proof of the violation of a statute or ordinance, the defendant may choose not to take the stand, and refuse to introduce any evidence whatsoever in his own behalf, relying solely on his presumption of innocence, and at the end of the trial, the jury should acquit the defendant, and it is their sworn duty to do so, if the State has not proved to their satisfaction the guilt of the accused beyond a reasonable doubt. The presumption is one of criminal negligence, an element of the crime of negligent homicide, and is not a prima facie presumption of guilt of such crime."
La.C.Cr.P. Art. 802 provides in part "[that] the court shall charge the jury as to the law applicable to the case." It is also the duty of the trial judge to give a requested charge, if the charge does not require qualification, limitation, or explanation and is not included in the general charge or in another special charge, if the requested charge is totally correct and pertinent to the case. La.C.Cr.P. Art. 807. See also State v. Clement, 368 So.2d 1037 (La.1979); State v. Marse, 365 So.2d 1319 (La.1978).
The trial court must charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. This charge must be supported by the evidence presented at trial, because the trial court is not required to instruct the jury on abstract principles of law. State v. Clement, supra; State v. Marse, supra.
In the case before the bar, the trial judge had determined at a hearing prior to trial that he would not make reference to the presumptive evidence language of R.S. 14:32[6]. During the course of the trial there was no mention whatsoever of the presumption. In fact, there is no reference in the trial record to any violation of criminal statutes or ordinances by Telford, other than the one for which he was being tried.
The trial judge's charge to the jury made no mention of the presumptive evidence language, nor of the effect of the intoxication evidence in the case. There is nothing in the charge which might suggest to the jury that an implication could be drawn that the defendant had violated a criminal statute or ordinance other than the charge he was defending against. Thus, the entire matter of Telford's intoxication was presented and treated as one of the facts surrounding the accident.
Since no evidence was presented at trial concerning any inference or violations of statutes, the trial judge was correct in not charging the jury in regards to the presumptive language of R.S. 14:32. Such a charge would not have been supported by the evidence presented at trial; and would have been in conflict with his previous commitment.
*351 Defendant's requested charge was undoubtedly designed to overcome any prejudicial effect which might arise from an instruction that would convey to the jury the idea that it should give special weight to violations of other criminal statutes. As no such instruction was given to the jury, no counter instruction was necessary. As noted by the state, the requested jury charge could only expose jurors to the concept of the presumption, the very evil which defense counsel had sought to avoid, a concept of which they were totally unaware.
The constitutional problems inherent in the use of the presumptive evidence language of R.S. 14:32 thus did not arise in this case. Defendant's requested special charge was therefore properly denied.
AFFIRMED.
NOTES
[1] Defendant assigned three errors. In brief to this Court, the defense specifically abandons Assignment of Error No. 1 except insofar as it related to Assignment of Error No. 3.
[2] The original trial date of June 5, 1978, was delayed at least six occasions by grants of continuance, which defendant contends were requested solely by the state. The minutes do not reveal the reason for the several continuances of trial in this matter, but counsel for the prosecution claims that both the state and the defense consented to continuances pending a determination by the Fifth Circuit Court of Appeals as to the constitutionality of the provision contained in La.R.S. 14:32 that violation of a statute or ordinance constitutes presumptive evidence of negligence. See Hammontree v. Phelps, 605 F.2d 1371 (5th Cir. 1979). The state version of the need for these continuances would appear to be supported by defendant's May 9, 1979, motion wherein defense counsel cites the pendency of the presumptive negligence issue before this Court as justification of his request.
[3] However, Grafton later testified that he did not receive the subpoena until approximately 4:15 p. m. (Tr., p. 97)
[4] When testimony resumed on the following morning, it took nearly three and one-half hours to conclude the trial. (Tr., minutes, p. 4)
[5] La.R.S. 14:32 in pertinent part provides:

Negligent homicide is the killing of a human being by criminal negligence.
The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.
[6] In ruling on a Motion to Quash prior to trial, the Trial Judge stated that it was his intention not to instruct the jury on the presumptive evidence language of the negligent homicide article because of pending litigation as to its constitutionality. See Hammontree v. Phelps, 605 F.2d 1371 (5th Circuit 1979); (Trial, Part III, Ruling on Motion To Quash, p. 1-2).