470 So.2d 360 (1985)
STATE of Louisiana
v.
Milton H. GUILLOT.
No. 84-KA-675.
Court of Appeal of Louisiana, Fifth Circuit.
May 13, 1985.
Rehearing Denied June 17, 1985.
*361 John M. Mamoulides, Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty., Research & Appeals, Gretna, for plaintiff-appellee.
John F. Rau, Jr., Gretna, for defendant-appellant.
Before BOWES, CURRAULT and DUFRESNE, JJ.
CURRAULT, Judge.
Milton H. Guillot was found guilty of manslaughter in violation of LSA-R.S. 14:31. Thereafter, he was sentenced to twelve years at hard labor. It is from this conviction and sentence defendant now appeals. We affirm.
On May 5, 1983, the Guillot family was at homeStella and Milton Guillot; their two-year old son, Jules; their sixteen-year old foster daughter, Cindy Barrow; and Stella's two children from her previous marriage to Manfred Strider, the victim in this case. At approximately 7 p.m., Milton left home in a good mood to go play in his weekly all night card game at the Tropic, a bar in Kenner, Louisiana. After he left, Manfred Strider and his girlfriend Maureen arrived at the Guillot residence. Stella asked whether Manfred had any drugs for her. Manfred mixed cocaine injections for them all, and he and Maureen then spent the night there.
The next morning about 8:00 a.m., Stella called Milton at the Tropic and said she owed Manfred Two Hundred Dollars ($200) for the drugs she had used and asked Milton if she should write a receipt crediting the Fourteen Hundred Dollars ($1400) in child support Manfred owed her. Milton did not want Stella to do this and said that Manfred should meet him at the Tropic and he would pay Manfred Two Hundred Dollars ($200) in cash. Manfred and Maureen then drove to the Tropic and Milton gave Manfred $200 cash for the drugs used by Stella. Milton also asked Manfred to stop bringing drugs to Stella and asked him to stay away from the house when he was not there. Manfred agreed; and, according to Maureen, it was also understood that Manfred would go back to Milton's house to get thirty quaaludes he had left there with Stella.
Maureen and Manfred then left the Tropic and went back to Milton's house. Maureen stayed in the van and Manfred went inside the house to retrieve the drugs left with Stella. However, Manfred had some trouble when he attempted to get the drugs back from Stella, and it was during this struggle when Milton walked in.[1]
Milton had left the Tropic within minutes after Maureen and Manfred had left. He went home and, upon seeing Manfred's van *362 parked outside, armed himself with a .38 caliber revolver (which he kept in his car), unlocked the door and entered his home. Seeing no one he walked to the bedroom, whereupon seeing Manfred with his wife amidst articles of drug paraphernalia, he became so enraged that he believed he saw Manfred advance towards him with a gun (which was not really there). He then shot and killed Manfred, firing three shots. The Kenner Police Department was called; and, shortly thereafter, the defendant was taken into custody, without a struggle, from his home.
Defendant, Milton H. Guillot, was indicted on May 27, 1983 with the crime of second degree murder in violation of LSA-R.S. 14:30.1. Initially, defendant pled not guilty; but on August 18, 1983, defendant amended his plea to not guilty and not guilty by reason of insanity.[2] On January 12, 1984, the district court granted defendant's motion to suppress statements made by the defendant during his interrogation by the police.[3]
On April 9-12, 1984, the defendant was tried by a twelve-person jury and found guilty of manslaughter in violation of LSA-R.S. 14:31. Thereafter, on May 24, 1984, the court sentenced him to twelve years at hard labor. Defendant now appeals urging three of the five assignments of error filed below.

Assignment of Error 1
Counsel for defendant requested three special charges based upon the fact that sufficient evidence was introduced into the record for the jury to consider the application of paragraph 3 of Article 20 of Title 14 of the Louisiana Revised Statutes, pertaining to justifiable homicide, which request was denied by the court, to which ruling counsel for defendant objected and had his objection noted for the record.
Defendant contends the trial court erred in refusing to include three special charges in the jury instructions. The three special charges requested by defense counsel were the provisions of LSA-R.S. 14:20(3)[4] (Justifiable Homicide), the definition of simple burglary,[5] LSA-R.S. 14:62, and the provision of LSA-R.S. 40:967, making the illegal possession of methaquolone or cocaine a felony. The trial court's given charge defining justifiable homicide, LSA-R.S. 14:20(1)(2) is as follows:

Section 20. Justifiable homicide
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; or
(2) When committed, for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm, by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.
*363 Defendant argues his special instruction would have informed the jury that the state bears the burden to prove that justifiable homicide involving a burglar is not a justifiable homicide. The defendant contends that because he asserted that the killing was a result of the victim's allegedly unauthorized entry into his home (and his thinking that Manfred had a gun and was going to shoot him) that the instructions noted, supra, were pertinent. The state argues the evidence supports neither an inference that the defendant shot in self-defense nor that it was otherwise justifiable.
Special requested charges are governed by LSA-C.Cr.P. Article 807 which provides that a special charge shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly pertinent and correct. State v. Toomer, 395 So.2d 1320 (La.1981); State v. Telford, 384 So.2d 347 (La.1980).
In addition, LSA-C.Cr.P. Article 802 obligates the trial judge to charge the jury as to the law applicable to the case. Under these rules, the trial court is required to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors could reasonably infer from the evidence. State v. Telford, supra; State v. Marse, 365 So.2d 1319 (La.1978). This charge must be supported by the evidence however. State v. Telford, supra; State v. Clement, 368 So.2d 1037 (La.1979); State v. Miller, 338 So.2d 678 (La.1976). For purposes of the present case, the determination of whether the trial court erred in refusing defendant's requested instructions noted, supra, depends upon whether the justification defense (involving a burglar) is fairly supported by the evidence.
Testimony at trial showed that the defendant's wife was a narcotics addict and that Manfred Strider supplied her with narcotics. On the day of the shooting, defendant had met with Manfred and ordered that Manfred no longer supply his wife with drugs or come to his house without his being there. When the defendant returned home, shortly afterwards, and saw drug paraphernalia spread out and Manfred Strider, he became so incensed that he believed he saw a gun in Manfred's hand which wasn't there, and he shot the victim. There does not appear to be any evidence, other than the defendant's assertion, that Manfred made an unauthorized entry into the home of defendant and his wife. There is direct contradictory testimony from Manfred's girlfriend that she overheard a conversation between the defendant and Manfred in which it was agreed that Manfred would go back to the defendant's house and get his thirty quaaludes which he had left with Stella.
The evidence does not support defense theory that the victim was in the process of the crime of burglary when the defendant shot and killed him. Thus, his proposed instructions noted, supra, would not appear pertinent to the case because it was not supported by the evidence at trial. The court would not therefore be required to give it under LSA-C.Cr.P. Article 807. State v. Belgard, 410 So.2d 720 (La.1982).
Furthermore, it is well settled that requested charges which are already substantially given and covered by the trial court's general charge are properly refused. LSA-C.Cr.P. art. 807; State v. Simmons, 422 So.2d 138 (La.1982); State v. Garrison, 400 So.2d 874 (La.1981); State v. Mead, 377 So.2d 79 (La.1979); State v. Marse, supra.
It would appear that the jury in the instant case had sufficient information without the special jury charge to understand that if defendant had shot in self-defense of his wife or himself (or the shooting was otherwise justified), it should return a verdict of not guilty to second degree murder. Here, during the general charge to the jury, the court gave instructions regarding the elements of self-defense and justifiable homicide and the possible responsive verdicts. Furthermore, the jury was instructed that where the defendant raises either defense, that he acted in self-defense or that the killing was *364 justifiable, the state has the burden of proof on that issue.
The jury had ample information to understand that if the defendant killed in the reasonable belief of self-defense (or the shooting was otherwise justifiable) that it should return a verdict of not guilty of second degree murder. Accordingly, this assignment of error is dismissed for lack of merit.

Assignment of Error 2
Upon objection of the state, counsel for defendant was prevented from arguing to the jury the application of the third paragraph of Section 20 of Title 14 of the Louisiana Revised Statutes, pertaining to justifiable homicide, to which ruling counsel for defendant objected and had his objection noted for the record.
During defense counsel's closing argument, he attempted to read LSA-R.S. 14:20(3). He was interrupted by state objection. The trial court then ruled that defendant could not "quote incorrect law that this court had already ruled is not applicable in this particular case.... and is not going to give that part in the jury charge." Defense counsel objected to this ruling and then continued with closing argument. Defense counsel argues here that the trial judge improperly restricted the scope of his closing argument.
In State v. Toomer, 395 So.2d 1320, 1336 (La.1981), the Louisiana Supreme Court set forth the applicable statutory and jurisprudential rules which pertain to closing argument of trial counsel at a criminal trial as follows:
"The trial court based this restriction upon La.C.Cr.P. art. 774, which provides in pertinent part:
"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
"The trial judge has wide discretion in confining the argument to the scope of the evidence. State v. Lee, 340 So.2d 180 (La.1976); State v. Dorsey, 262 La. 785, 264 So.2d 644 (1972), and to the fair and reasonable conclusions to be drawn therefrom. State v. Weathers, 320 So.2d 895 (La.1975)."
In the Weathers case this court said:
"Broadly speaking, counsel must confine themselves in argument to the facts introduced in evidence, to matters of general or common knowledge, and to the fair and reasonable conclusions to be drawn therefrom. La.Code Crim.P. art. 774 (1966); State v. Smith, 257 La. 1109, 245 So.2d 327 (1971). The trial judge is accorded wide discretion in confining the closing argument to the scope of the evidence. State v. Dorsey, 262 La. 785, 264 So.2d 644 (1972)."
The court in Toomer, supra, then concluded that the trial court had properly excluded reference to accidental or negligent homicide. The trial court found that they were not related to the facts introduced in evidence, hence they were not within the scope of closing argument. The court also noted that the special requested charge was not a responsive verdict to the crime charged.
In the instant case, the trial court did not err in refusing the requested special charge on the burglary paragraph of the justifiable homicide statute as the record contains no evidence which would support such a charge. Because there is no evidentiary support for a theory that the victim's actions were that of a burglar when defendant shot him, the trial court's restriction of counsel's argument was proper. Accordingly, this assignment of error is dismissed for lack of merit.

Assignment of Error 3
Despite objections by counsel for defendant, the state was permitted to use part of a confession taken from defendant without benefit of counsel, without any ruling by the trial judge prior to the trial that the confession was given freely and voluntarily, and no evidence was presented to the trial jury prior to use of the confession that the confession was given freely and voluntarily.
*365 At trial defendant took the stand in his own defense and stated, in essence, that he had never before accepted drugs from the victim as a credit against his wife's past due alimony. The prosecutor was then allowed to cross-examine him about contradictory statements he had given to Officer Nicolosi while in Kenner Central Lockup the morning of May 4, 1983, and within hours after the fatal shooting of the victim. The defendant acknowledged that he spoke with Officer Nicolosi but denied making the contradictory statements. To rebut defendant's testimony, his prior statements given to Officer Nicolosi were introduced over defense objection that no prior predicate had been laid to show that the statement was free and voluntary.[6]
In these statements defendant said:
"Q. Now, I'm going to show you page 2 of your second statement and I'm going to read that to you first. On page two, and these are questions that were asked to you by Officer Nicolosi and answered by you. Do you remember if that was the format that was followed when he conducted that interview with you?
A. Yes, sir.
Q. All right, the question was: `When was the last time that you took drugs?' Answer: `Night before last.' Question: `What did you take?' Answer: `I shot cocaine, a little bit.' Question: `Who were you with when you shot cocaine?' Answer: `Manfred, my wife, and I. He was giving me credit on the $1,400.00 judgment that he was ordered to pay my wife.' Now, do you remember saying that to that officer?"
The state argues that the use of the suppressed statements may be used for impeachment of the accused citing Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); State v. Kent, 371 So.2d 1319 (La.1979).
Louisiana statutes make clear that when an accused takes the witness stand he is subject to all the rules applying to other witnesses, LSA-R.S. 15:462, including those which allow a witness's testimony and credibility to be impeached by proof of a prior inconsistent statement. LSA-R.S. 15:486 and 15:493. Nevertheless, when the impeaching statement is in the form of a confession or admission, the state must still satisfy the normal rules regulating the admissibility of confessions just as if the statements had been offered in the state's case in chief. Therefore, the state, in offering an inculpatory statement for impeachment must still establish that the statement was given freely and voluntarily before it can be introduced. State v. McGraw, 366 So.2d 1278 (La.1979). And see, State v. Felde, 422 So.2d 370 (La.1982); State v. McCarty, supra.
In Harris v. New York, supra, the United States Supreme Court held that a statement made by the defendant to the police, although inadmissible under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to establish the prosecution's case-in-chief, could properly be used to impeach his credibility as a witness.[7] However, this case would not appear dispositive here, as the state contends, for its holding still does not have the effect of allowing the prosecution to dispense with the requirements for admissibility under state law. State v. McGraw, supra.
However, in Williams v. Maggio, 727 F.2d 1387 (5th Cir.1984), the Federal Court of Appeals for the Fifth Circuit of the *366 United States,[8] held that although the prosecution bears the burden of persuading the court by at least a preponderance of evidence that a confession was voluntary; and that, although the defendant had the right to an evidentiary hearing and to a finding of voluntariness before the jury heard the confession, still where after admission of such statement voluntariness was proved, the error was harmless.
Likewise, here there has been no shown reason to believe the procedural defect in this case prejudiced the defendant's ability to rebut the state's evidence that his inculpatory statements were voluntarily and freely rendered.[9] The admissibility of the inculpatory statements had previously been ruled upon at a hearing on defendant's motion to suppress. Although the transcript of this hearing was not included in the record for review, the trial judge in lengthy reasons stated for the trial record the basis for his grant of defense motion to suppress the statements and, additionally, his reasons for presently ruling defendant's statements to Officer Nicolosi had been freely and voluntarily given. The trial judge stated in pertinent part:
"THE COURT:
As I recall, there has been no ruling on it because the court didn't have to rule on it. The court found that Mr. Giacobbe had requested to be advised if a statement was to be taken but, as I recall the testimony of the police officers, they advised him of his Constitutional Rights and he testified freely and voluntarily. The defendant even testified at the hearing that he was treated well, that there was no duress. So, this court now finds, from the hearing that we previously had, that although the statements were suppressed on the grounds that Mr. Giacobbe was not notified before any statement was taken, but this court finds that from the balance of the testimony presented at the hearing, the court finds that the statements were not made under the influence of fear or duress or intimidation."
Likewise, Officer Nicolosi later testified at trial about the circumstances under which the inculpatory statements were made; that they were freely and voluntarily given without force, coercion or intimidation.[10]
And as noted by the trial judge, the defendant did not allege in his testimony that the statements were not freely and voluntarily given.[11]
Although the state must lay a predicate under LSA-R.S. 15:452 showing that the defendant's statements were voluntary prior to using defendant's statements for impeachment purposes, under Williams v. Maggio, supra, the error is harmless. The record clearly demonstrates to our satisfaction that the statement was voluntarily made.
Accordingly, for the above stated reasons, the conviction and sentence of defendant are affirmed.
AFFIRMED.
NOTES
[1] This struggle and the shooting was observed by Cindy Barrow who testified that she was in the bedroom during the events surrounding this crime. However, Stella testified that Cindy did not witness the shooting.
[2] A sanity hearing was held on September 15, 1983, at which time Drs. Arneson and Shraberg testified. Afterwards, the trial judge found the defendant legally sane and competent to stand trial and assist his counsel in his own defense.
[3] The state assigned that ruling as error and appeared before this court under a grant of supervisory writs, La. Const.1974, Article 5 § 10(C). That writ, No. 84-K-86, was denied by this court by date February 15, 1984.
[4] Defense requested jury charge No. 1, which the trial judge refused to give, would have told the jury in pertinent part that a homicide is justifiable [LSA-R.S. 14:20(3) ] "[w]hen committed against a person whom one reasonably believes to be likely to use any unlawful force against a person present in a dwelling ... while committing or attempting to commit a burglary of such dwelling.... The homicide shall be justifiable even though the person does not retreat from the encounter."
[5] Defense requested jury charge No. 2, which the trial judge refused to give, would have told the jury, in pertinent part, that a simple burglary [LSA-R.S. 14:62] is an "unauthorized entering of any dwelling ... with the intent to commit a felony or any theft therein...."
[6] Defense counsel additionally urges the statement inadmissible because it was uncounseled even after identified counsel had requested notification prior to the defendant's interrogation by Kenner police officers. But see U.S. v. Foley, 735 F.2d 45 (2nd Cir.1984); State v. McCarty, 421 So.2d 213 (La.1982) [uncounseled but voluntary confession used for impeachment at trial].
[7] The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements. Harris v. New York, supra, 91 S.Ct. at 646.
[8] State v. Williams, 271 So.2d 857 (La. 1973).
[9] It can also be noted that the trial judge appropriately instructed the jury on their duty to determine the weight to be given the confession. See, Williams v. Maggio, supra, at 1390 n. 6.
[10] Officer Nicolosi testified that the defendant signed his waiver of arrestee form. He testified that he typed defendant's statements and that he had defendant read them and sign each statement and each page. He testified that defendant was crying off and on.
[11] Defendant stated, however, that his eyes were filled with tears that he could not read his statements after they were given and that he was at that time so emotional that he does not remember signing a waiver form or making these particular statements or reading and signing them. See State v. Harrison, 451 So.2d 69 (La.App. 4th Cir.1984); State v. Beck, 445 So.2d 470 (La.App. 2d Cir.1984), writ denied, 446 So.2d 315 (Crying at confession does not negate its voluntariness).