Judgment rendered July 17, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,705-KA
No. 55,706-KA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                           Appellee

versus

JOSHUA MASTERS                               Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 385,477

Honorable Donald Edgar Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Peggy J. Sullivan

JOSHUA MASTERS                         Pro Se

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

JASON W. WALTMAN
REBECCA A. EDWARDS
COURTNEY RAY
Assistant District Attorneys

* * * * *

Before STONE, COX, and MARCOTTE, JJ.

**COX, J.**

This criminal appeal arises from the First Judicial District Court, Caddo Parish, Louisiana. Defendant, Joshua Masters ("Masters"), was convicted of indecent behavior with a juvenile under the age of 13, in violation of La. R.S. 14:81(A)(1) and (H)(2). Masters, as a fourth felony offender, was sentenced to 40 years at hard labor, without benefit of parole, probation, or suspension of sentence. Masters now appeals and presents four counseled assignments of error concerning sufficiency of the evidence, jury instruction, introduction of evidence under La. C. E. art. 412.2, and sentencing. For the reasons expressed, we affirm.

## FACTS

On November 16, 2021, Masters was charged, by bill of information, with indecent behavior with a juvenile, obstruction of justice, and unlawful use of a social networking site. The amended bill of information, filed on January 24, 2023, charged Masters with indecent behavior with a juvenile under the age of 13, in violation of La. R.S. 14:81(A)(1) and (H)(2). Jury trial began on February 7, 2023, wherein the following testimony was presented:

First, M.A. testified that she was born on March 1, 2011, and was 11 years old. M.A. identified Masters in open court and stated that in 2021, she lived in the home with her mother and Masters. M.A. testified that she had her own room that was located on the opposite end of the home from the bedroom her mother and Masters shared. M.A. stated that she took Melatonin either every night or every other night to help her sleep and that the medicine was stored in her mother's room. M.A. recalled that on

September 28, 2021, she took Melatonin before she went to bed around 8:30 p.m. or 9:00 p.m., and that she wore an oversized t-shirt and shorts.

M.A. testified that she was woken up by her mother and Masters arguing and that she was unsure why her shorts and underwear were pulled down. M.A. stated that after she pulled her clothing up, her mother tried to get Masters away from her. On cross-examination, M.A. testified that she took the Melatonin in front of her mother and Masters before she went to her room for the night. In clarifying her statements from her forensic interview, M.A. stated that she was unsure why she told the interviewer Masters was not in the room when she woke. Specifically, M.A. stated, "I don't remember exactly what I said, but I remember my mom was, like, trying to get me away from him." On redirect, M.A. testified again that when she woke up, Masters was in her room and that her mother tried to get her away from Masters by having her go across the street to her cousin's home.

Patricia Allen ("Allen"), M.A.'s mother, testified next and identified Masters in open court. She testified that she had been in a relationship with Masters for four years and that Masters lived in the home with her and M.A. Allen testified that most nights, M.A. took Melatonin to help her sleep and that she kept the medicine in her room for M.A. to take in front of her. Allen testified that on the night of September 28, 2021, M.A. came into her room, as usual, and took her medicine around 7:30 p.m. or 8:00 p.m. Allen stated that sometime after that, she fell asleep but woke up around 10:30 p.m. and noticed that Masters was not in bed.

Allen explained that it was not unusual for her to wake up and discover that Masters was not in bed at night, but that usually she would call for him, there would be a delayed response, and then he would return to bed.

2

Allen stated that she decided to get up and look for Masters. Allen stated that when she did not find Masters in the kitchen or living room, she noticed that M.A.'s door was open, which was unusual because M.A. normally slept with the door closed. Allen explained that when she went to close M.A.'s door, she saw that M.A.'s bottom was exposed, and that Masters was in the room with his pants and underwear pulled down while he masturbated. Allen explained that it was not normal for M.A.'s clothing to come down while she slept.

Allen stated that when she saw this, she screamed and attacked Masters to get him away from M.A. Allen testified that Masters repeatedly stated that he was not doing anything and that if Allen called the police it would "ruin [his] life," that he would "go to jail forever," and begged her not to call the police and let him leave instead. Allen stated that during the argument, M.A. woke and asked why her clothing was pulled down. Allen stated that she told M.A. to pull her clothing up and to go across the street to her nephew's home so M.A. could get away from Masters, who was still in the room.

Allen testified that although she called the police, Masters left before the officers arrived. Allen stated that later that same night when she returned to the home, Masters was already in the home, and when she called the police, he fled. Allen stated that Masters returned for a third time, and officers were finally able to apprehend him. On cross-examination, Allen testified that Masters was in the room when M.A. woke up and that M.A. was asleep when she discovered Masters in the room.

Finally, Detective Thomas Lites ("Det. Lites") of the Caddo Parish Sheriff's Office testified that when he was assigned this case, he contacted

3

Allen and arranged for M.A. to give an interview at Gingerbread House.

Det. Lites stated that after that, Allen called and informed him that Masters was in her home. Det. Lites stated that he immediately sent out patrol to Allen's home and apprehended Masters. Det. Lites then identified Masters in open court. Thereafter, the State introduced Masters' court record from Bryan County, Oklahoma. Det. Lites confirmed that the exhibit was a copy of Masters' record and testified that Masters had been charged and found guilty of felony rape by instrumentation.[1] Defense counsel objected to the introduction of the evidence as being more prejudicial than probative, but the objection was subsequently overruled.

At the close of testimony and closing arguments, defense counsel objected to the trial court's denial to amend jury instructions to include an instruction regarding the "in the presence of" element for this offense, citing *State v. Interiano*, 03-1760 (La. 2/13/04), 868 So. 2d 9. The trial court explained:

> It was my understanding in chambers you presented me with a
> copy of the caselaw and it stated that when the State was
> relying solely on in the presence of. It stated that it didn't apply
> where there was touching. And in this instance, the evidence
> suggests that Mr. Masters pulled the pants and undergarments
> down of the victim, and that would result in a touching.
> Therefore, the request is denied.

Thereafter, Masters was found guilty as charged.

On March 3, 2023, the State filed a fourth felony habitual offender bill against Masters based upon the following predicate offenses:

- On March 29, 2007, Masters pled guilty to attempted failure
  to register as a sex offender. Masters' one year at hard labor
  sentence was suspended, and he was placed on one year of

---

[1] Masters was convicted of rape by instrumentation in 2003 in Byran County, Oklahoma, in violation of 21 O.S.2001, § 1111.1.

supervised probation. Masters' probation was revoked on May 27, 2008, and his original sentence of one year at hard labor was imposed.

- On November 16, 2011, Masters pled guilty to failure to register as a sex offender. He was sentenced to three and one-half years at hard labor.
- On April 6, 2016, Masters pled guilty to failure to register as a sex offender. Masters was sentenced to two years at hard labor without benefit of probation, parole, or suspension of sentence.

On April 20, 2023, during the habitual offender hearing, John Rowe ("Rowe"), a probations officer of the Department of Public Safety and Corrections, testified that on March 29, 2007, Masters pled guilty to attempted failure to register as a sex offender and was sentenced to one year at hard labor, with credit for time served, and a one-year probation period. Rowe further testified that on October 13, 2011, Masters was charged with failure to register as a sex offender and pled guilty as charged. Rowe also identified that on November 14, 2015, Masters was again charged with a failure to register as a sex offender and that on April 6, 2016, Masters pled guilty and was sentenced to two years at hard labor. Corporal John McCain took Masters' fingerprints, compared them to the prints on the charges read by Rowe, and confirmed that they belonged to the same individual.

Prior to sentencing, Allen provided a victim impact statement on M.A.'s behalf, and Masters' mother, Kathy Masters, testified on behalf of Masters. After reviewing Masters' personal and criminal history, and the factors listed under LA. C. Cr. P. art. 894.1(A) and (B), the trial court noted that Masters failed to accept responsibility for his actions and sentenced Masters to 40 years at hard labor without benefit of probation, parole, or suspension of sentence, with credit for time served. This appeal followed.

## DISCUSSION

**Sufficiency of the Evidence**

By his first counseled assignment of error, Masters argues there was insufficient evidence to convict him of indecent behavior with a juvenile. Masters argues that to be found guilty, there must have been a known commission of a sexual act, such that the minor "sees or senses the act is taking place." Masters argues again that M.A. was asleep and could not see or sense the act and that there was no testimony to show he touched M.A. in a lewd or lascivious manner. He maintains that the mere fact that M.A.'s clothing was "out of place" and her bottom exposed, does not mean that he was "responsible for the state of her clothing," and the State did not exclude the possibility that M.A.'s clothing "became disarrayed as the child toss[ed] and turned in the night."

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed. 2d 560 (1979); *State v. Hearold*, 603 So. 2d 731 (La. 1992). See also La. C. Cr. P. art. 821. This standard does not provide an appellate court with a vehicle for substituting its appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L.Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the

6

evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. A reviewing court affords great deference to a trial court's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir. 8/30/02), 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d 422.

In the absence of internal contradiction or irreconcilable conflict with the physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a factual conclusion. *State v. Johnson*, 54,028 (La. App. 2 Cir. 9/22/21), 328 So. 3d 524, *writ denied*, 21-01850 (La. 2/22/22), 333 So. 3d 441; *State v. Elkins*, 48,972 (La. App. 2 Cir. 4/9/14), 138 So. 3d 769, *writ denied*, 14-0992 (La. 12/8/14), 153 So. 3d 438.

In viewing the evidence and testimony in the light most favorable to the State, we find that the testimony produced at trial was sufficient to convict Masters of the charged offense. Here, Masters was charged with indecent behavior with a juvenile in violation of La. R.S. 14:81(A), which is defined, in pertinent part, as:

> A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person:
>
> (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. Lack of knowledge of the child's age shall not be a defense[.]

To convict, the State must prove and the jury must find (1) that the offender committed a lewd or lascivious act upon the person of or in the presence of the victim, (2) that the act described was a lewd or lascivious act, (3) that the victim was under the age of 17 and more than two years younger than the defendant at the time of the alleged offense, (4) that the defendant was at

7

least 17 years of age at the time of the alleged offense, and (5) that the defendant acted with a specific intent to arouse or gratify his own sexual desires or the sexual desires of the victim. *State v. Collins* 52,885 (La. App. 2 Cir. 9/25/19), 280 So. 3d 891.

Masters does not dispute that M.A. was under the age of 17 at the time of the act, that there is an age difference of more than two years between him and M.A., that his actions are considered lewd and lascivious, or that the act was done with the specific intent to "arouse or gratify his own sexual desires." Instead, Masters argues that the evidence was insufficient to provide beyond a reasonable doubt that the act was done in M.A.'s presence. In support, Masters relies once more on the decision in *Interiano*, *supra*, for the supposition that in the absence of physical touching, the victim must have some sensory awareness of the act.

Here, it is undisputed that M.A. was asleep when Masters committed the act in the minor's room. However, we find that there was sufficient testimony presented for a jury to reasonably conclude that Masters touched M.A., *i.e.*, that he pulled her clothing down after he entered the room. Allen specifically testified that it was not normal for M.A.'s clothing to come down so that her body would be exposed while she slept. Importantly, M.A. testified that when she woke up, she had to ask her mother why her clothing was pulled down, indicating that this was out of the ordinary for the minor.

Given the testimony presented, we find that there was sufficient evidence for a reasonable jury to find that Masters purposefully entered M.A.'s room after she went to bed and pulled her clothing down before he committed the act. Moreover, it is clear from the jury's verdict that it found both Allen and M.A.'s testimony was credible to support the conviction, and

8

the jury's decision to accept the victim's testimony as truthful is entitled to great deference. Therefore, we find the foregoing testimony was sufficient to support the jury's verdict, and this assignment of error is also without merit.

**Jury Instructions**

By his second counseled assignment of error, Masters argues that the trial court erred in denying his oral request to provide additional jury instructions "as to the portion of the statute referring to the offense being committed in 'the presence of' the minor child." In support, Masters cites the Louisiana Supreme Court decision in *Interiano*, *supra*, in which the defendant was charged with indecent behavior with a juvenile after he admitted he occasionally watched pornography and masturbated while his 10-month-old played or slept nearby.

The defendant in *Interiano*, *supra*, argued that La. R.S. 14:81(A) was "unconstitutionally vague, overbroad, and ambiguous," because it failed to define the terms "lewd and lascivious" and "in the presence of." The trial court granted the motion, and on direct appeal, the Court addressed, in pertinent part, the statutory phrase "in the presence of" to determine whether some form of sensory awareness must accompany the physical proximity to the lewd and lascivious act. In part, the Court determined that:

> [T]he complete definition of "presence" encompasses sensory awareness as well as physical proximity. The legal usage of the word "presence" denotes something more than being in the immediate vicinity; it is the viewing or awareness of an act that gives legal significance to the term.
> . . .
> **. . . [I]n the absence of a physical touching upon the person of the child**, La. R.S. 14:81(A) requires the knowing commission of a sexual act such that the child sees or senses that a sexual act is taking place, even if the child is not able to

9

articulate or even comprehend what the offender is doing, for a violation to occur. (Emphasis added).

From this, Masters argues that no testimony was presented that he touched M.A. or pulled her clothing down; therefore, he maintains that the jury should have been instructed that the minor should either "see or sense the act taking place to satisfy the 'in the presence of' element of the offense." He argues that the failure to provide this instruction confused the jury and left them "free to speculate, contrary to due process and the guidance" in *Interiano*, *supra*. We disagree.

The trial court is required to charge the jury "as to the law applicable to the case." La. C. Cr. P. art. 802. The State and the defendant shall have the right before argument to submit to the court special written charges for the jury. A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. La. C. Cr. P. art. 807. The charge, however, must be supported by the evidence. *State v. Perkins*, 13-1917 (La. 9/3/14), 149 So. 3d 206; *State v. Telford*, 384 So. 2d 347 (La. 1980). Failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to substantial rights of the accused, or a substantial violation of a constitutional or statutory right. La. C. Cr. P. art. 921; *State v. Perkins*, *supra*; *State v. Marse*, 365 So. 2d 1319 (La. 1978).

In *Interiano*, *supra*, the Supreme Court made clear that *in the absence of* physical contact, the victim must be perceptually aware that the act occurred. In the present case, the State presented the theory to the jury that after M.A. fell asleep, Masters entered her room and pulled M.A.'s clothing down before performing the lewd act. Although Masters argues that there

was no evidence to support this, M.A.'s testimony revealed her confusion about the state of her clothing when she woke up, and Allen further testified that it was not normal for M.A.'s clothing to come down while she slept.

In denying Masters' oral request for additional jury instruction, the trial court explained:

> It was my understanding in chambers you presented me with a copy of the case law and it stated that when the state was relying solely on in the presence of. It stated that it didn't apply where there was touching. And in this instance, the evidence suggests that Mr. Masters pulled the pants and undergarments down of the victim, and that would result in a touching. Therefore, the request is denied.

Given the State's opening statement, and the subsequent testimony from M.A. and Allen that it was not normal for M.A.'s clothing to come down while she slept, we cannot say that the trial court erred in denying Masters' oral request for special jury instructions.

Moreover, we do not find that the trial court's decision not to include the requested language was prejudicial to Masters' constitutional or statutory rights, nor did the decision result in a miscarriage of justice. Accordingly, we find that this assignment of error lacks merit.

**Other Crimes Evidence**

By Masters' third counseled assignment of error, he argues that the evidence of his prior conviction in 2003 should not have been entered into evidence because no pretrial hearing was held regarding the use of the conviction as evidence. Masters further argues that the prior offense was inadmissible under La. C. E. art. 412.2 because the incident involved an adult victim and did not show whether he had a lustful disposition toward children.

11

La. C.E. art. 412.2, which governs the admission of evidence of similar crimes, wrongs, or acts in sex offense cases, states:

> A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
>
> B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.
>
> C. This Article shall not be construed to limit the admission or consideration of evidence under any other rule.

La. C.E. art. 412.2 creates an exception to the rule set forth in La. C.E. art. 404(B)(1), which generally prohibits the introduction of evidence of "other crimes, wrongs or acts" for the purpose of proving a person's character or propensity to criminal activity. *State v. Layton*, 14-1910 (La. 3/17/15), 168 So. 3d 358.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403. Questions of relevancy and admissibility are discretion calls for the trial judge, and determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. *State v. Braden*, 55,275 (La. App. 2 Cir. 9/27/23), 372 So. 3d 900, *writ denied*, 23-01428 (La. 4/9/240 382 So. 3d 830.

12

This same standard is applied to rulings on the admission of other crimes evidence and evidence under La. C.E. art. 412.2. *State v. Allen*, 54,153 (La. App. 2 Cir. 12/15/21), 331 So. 3d 1101. The introduction of inadmissible other crimes evidence results in a trial error subject to harmless error analysis on appeal. *Id.* In this context, the proper analysis for harmless error review is "to determine whether the guilty verdict actually rendered at trial was surely unattributable to the erroneous admission of La. C.E. art. 412.2 evidence." *Id.*

In this case, the State filed a notice of intent to introduce evidence under La. C.E. art. 412.2 of Masters' prior conviction in 2003 of rape by instrumentation in Bryan County, Oklahoma. The notice indicated that the evidence would be used to show the "defendant's prior sexually assaultive behavior and/or the defendant's lustful disposition toward children." During trial, the State, without objection, provided in its opening statement that it would introduce testimony regarding Masters' previous conviction of a sexual offense. When Det. Lites testified about the conviction, defense counsel objected solely on the basis that the evidence was more prejudicial than probative, which was subsequently overruled.

Now, on appeal, Masters contends that the other crimes evidence was inadmissible under La. C.E. art. 412.2. However, as the record reflects, no contemporaneous objection was made to prohibit the introduction of the evidence under this article. Our law is well-established: to preserve an issue for appellate review, a defendant must contemporaneously state an objection with the occurrence of the alleged error and is limited to the grounds for objection articulated at trial and a new basis for an objection may not be raised for the first time on appeal. *State v. Copeland*, 52,742 (La. App. 2

Cir. 9/25/19), 280 So. 3d 848, *writ denied*, 19-01646 (La. 9/27/21), 324 So. 3d 89.

However, even if the admission of the evidence was erroneous, we find that it was nevertheless harmless. Although Masters argues that the error created confusion for the jury, we cannot say that the verdict was influenced by the sparse testimony regarding the previous offense, especially when Det. Lites testified that Masters' previous conviction did not mean he was guilty of the present offense. We give deference to the jury in weighing the testimony presented and find that M.A.'s and Allen's testimonies during trial was sufficient for the jury to conclude, absent the introduction of the other crimes evidence, that Masters was guilty of the present offense. Therefore, we find that this assignment of error lacks merit.

**Excessive Sentence**

By his final counseled assignment of error, Masters argues that his 40-year sentence was unconstitutionally harsh and excessive. He asserts that this is a near-maximum sentence in a case in which he is not the worst of offenders, and this is not the worst of offenses. Masters further argues that the trial court failed to provide whether his entire sentence was imposed without benefit of parole pursuant to La. R.S. 14:81, which he claims only requires two years to be imposed without benefit of parole, probation, or suspension of sentence.

Appellate review to determine whether a sentence is constitutionally excessive is a two-pronged inquiry whereby the court first considers whether the trial court took cognizance of the guidelines set forth in La. C. Cr. P. art. 894.1, and the second considers constitutional excessiveness. *State v. Wing*, 51,857 (La. App. 2 Cir. 2/28/18), 246 So. 3d 711. However, in this case, no

14

motion to reconsider sentence was filed; therefore, this Court's review is limited to the constitutional excessiveness of the sentence alone. La. C. Cr. P. art. 881.1; *State v. Williams*, 51,667 (La. App. 2 Cir. 9/27/17), 245 So. 3d 131, *writ not cons.*, 18-0017 (La. 8/3/18), 248 So. 3d 322; *State v. Turner*, 50,221 (La. App. 2 Cir. 1/20/16), 186 So. 3d 720, *writ denied*, 16-0283 (La. 2/10/17), 215 So. 3d 700.

A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1; *State v. Mandigo*, 48,801 (La. App. 2 Cir. 2/26/14), 136 So. 3d 292, *writ denied*, 14-0630 (La. 10/24/14), 151 So. 3d 600. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Wing*, *supra*. The trial court maintains wide discretion in the imposition of sentences within statutory limits, and absent a showing of manifest abuse, an imposed sentence will not be set aside as excessive. *State v. West*, 53,526 (La. App. 2 Cir. 6/24/20), 297 So. 3d 1081.

Therefore, appellate review does not consider whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Dale*, 53,736 (La. App. 2 Cir. 1/13/21), 309 So. 3d 1031; *State v. Davis*, 50,149 (La. App. 2 Cir. 11/18/15), 181 So. 3d 200. Regarding Masters' conviction, La. R.S. 14:81(H)(2) provides:

> Whoever commits the crime of indecent behavior with juveniles on a victim under the age of thirteen when the offender is seventeen years of age or older, shall be punished by imprisonment at hard labor for not less than two nor more than twenty-five years. *At least two years* of the sentence imposed

15

shall be served without benefit of parole, probation, or suspension of sentence. (Emphasis added).

Masters was also adjudicated as a fourth felony offender under La. R.S. 15:529.1(A)(4)(b) which provides, in pertinent part:

> If the fourth felony and no prior felony is defined as a crime of violence under R.S. 14:2(B) or as a sex offense under R.S. 15:541, the person shall be imprisoned for not less than twenty years nor more than twice the longest possible sentence prescribed for a first conviction. If twice the possible sentence prescribed for a first conviction is less than twenty years, the person shall be imprisoned for twenty years.

Any sentence by the trial court for a habitual offender must fall within the sentencing requirements of the habitual offender statute. In this case, the sentencing range for this offense was not less than 20 years but no more than 50 years at hard labor, with at least two years to be served without benefit of parole, probation, or suspension of sentence. After a review of the record, and consideration of the particular facts of this case, we cannot say the trial court abused its discretion in sentencing.

Masters argues his sentence was improper, in part, because the trial court failed to specify whether the entire sentence was imposed without benefit of parole or whether only two years without parole, as required by La. R.S. 14:81, was imposed. In sentencing Masters, the trial court provided:

> Whoever commits the crime of indecent behavior with juveniles under the age of 13 when the offender is 17 years of age or older shall be sentenced to imprisonment at hard labor for not less than two nor more than 25 years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence.

> Having this day considered the evidence of the prior felony convictions within the requirements of Louisiana Revised Statute 15:529.1, and finding that it is in proper form thereunder, the Court finds the accused, as to the charge of indecent behavior with juveniles under the age of 13, to be a

16

> fourth felony habitual offender.  If the fourth felony and the no prior felony is defined as a crime of violence or a sex offense, the person shall be imprisoned for not less than 20 years nor more than twice the longest possible sentence prescribed for a first conviction or 20 to 50 years at hard labor with at least two years to be served without the benefit of probation, parole or suspension of sentence.  If twice the possible sentence prescribed for a first conviction is less than 20, the person shall be imprisoned for 20 years.
>
> . . .
>
> It is ordered, adjudged and decreed that Mr. Masters, as a fourth felony offender, be sentenced in accordance with Louisiana Revised Statute 15:529.1 and is hereby sentenced to 40 years at hard labor without benefit of probation, parole or suspension of sentence.

As provided, La. R.S. 14:81 requires that *at least two years* of the sentence shall be served without benefits, not that only two years can be imposed.

Masters further argues that the trial court did not provide whether a portion or the entirety of his sentence should be served without parole, but this Court finds no confusion in the trial court's instruction.  Specifically, in response to clarification from the clerk regarding the sentence, the trial court stated, "Forty years without benefit."

On this Court's review, it is clear the trial court intended to impose the 40-year sentence without benefits for the entirety of the sentence.

We further find that the 40-year sentence is not constitutionally excessive given the particular facts of this case and that Masters was adjudicated a fourth felony offender.  Prior to sentencing, the trial court heard a victim impact statement from Allen, who stated, in part, that Masters' actions may have been "permanently detrimental against [M.A.'s] emotional wellbeing," that Masters violated M.A.'s personal boundaries, and that he broke their trust after she allowed him to live with them.  The trial court then heard a statement from Masters' mother, who provided that

17

Masters was "still proclaiming his innocence in this matter" and that Masters had a difficult time registering as a sex offender.

At the close of this testimony, the trial court, in sentencing Masters, complied with the La. C. Cr. P. art. 894.1 factors, finding no mitigating factors but detailed several aggravating factors, including that Masters used his position in the household to facilitate the offense, that the offense resulted in significant permanent injury to the minor victim, and that Masters had not accepted responsibility for his action. The trial court then reviewed that Masters had a significant criminal history that primarily consisted of convictions for failure to register as a sex offender, which indicated that he would not "comply with any type of supervision." The trial court further spoke with Masters and considered his age, education, employment, as well as his family and social history.

In reviewing the totality of the particular facts of this case, namely that Masters intentionally went into M.A.'s room on the other end of the home when he knew M.A. was asleep after taking her medicine and then proceeded to commit the offense, that Masters failed on multiple occasions to register as a sex offender, and that his sentence falls within the statutory range for the offense, we find that Masters' sentence is neither grossly out of proportion to the severity of the offense nor does it shock the sense of justice.

Accordingly, we find that the trial court did not err in imposing this sentence, and this assignment of error lacks merit.

**Pro Se Assignments of Error**

Masters also advances his own pro se assignment of error on appeal. Specifically, Masters argues that trial counsel was ineffective regarding a host of issues, including:

(1) Failure to properly interview him;
(2) Failure to "file motion on numerous claims in his defense";
(3) Failure to submit written charges to the jury and only provided an oral request to the judge in chambers;
(4) Failure to file a motion to quash that he specifically requested in reference to the "in the presence of" element of the offense;
(5) Failure to object to the introduction of evidence of his other crimes, specifically his 2003 conviction in Oklahoma;
(6) Failure to argue that he "could not have caused significant permanent damage to the victim [if] she never saw it";
(7) Failure to request a pre-trial hearing to address the other crimes evidence;
(8) Failure to file a motion to reconsider sentence or post-verdict judgment of acquittal;
(9) Failure to argue that attempted failure to register as a sex offender is not a crime;
(10) Failure to argue that the "judge falsely stated that [Masters] refused to accept responsibility for his actions by remaining silent, exercising his. . . Fifth Amendment Right";
(11) Failure to argue that Masters was homeless, and the circumstances surrounding it, which caused his failure to register as a sex offender; and
(12) Failure to argue that at the time Masters failed to register, homeless persons "could not register on probation or parole. . . as [t]he statute has since changed to allow registration of homeless persons of probation or parole."

The Supreme Court set out the two-prong test for a defendant claiming ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984): that counsel's performance was deficient; and the deficiency prejudiced his defense. *State v. Hilliard*, 52,652 (La. App. 2 Cir. 8/14/19), 278 So. 3d 1065, *writ denied*, 19-01701 (La. 7/24/20), 299 So. 3d 68. Both the Louisiana and federal constitutions guarantee a criminal defendant's right to the effective assistance of counsel. U.S. Const. amend. VI; La. Const. art. 1, § 13;

19

*Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L.Ed. 2d 799 (1963); *State v. Brooks*, 94-2438 (La. 10/16/95), 661 So. 2d 1333; *State v. Bayles*, 53,696 (La. App. 2 Cir. 11/17/21), 329 So. 3d 1149.

Under the standard for ineffective assistance of counsel set out in *Strickland*, *supra*, adopted by Louisiana's Supreme Court in *State v. Washington*, 491 So. 2d 1337 (La. 1986), a reviewing court must reverse a conviction if the defendant establishes that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and counsel's inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect. *State v. Bayles, supra*. Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because this provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. *State v. McGee*, 18-1052 (La. 2/25/19), 264 So. 3d 445. When the record is sufficient, however, allegations of ineffective assistance of trial counsel may be resolved on direct appeal in the interest of judicial economy. *Id.*

A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. *State v. Miller*, 54,897 (La. App. 2 Cir. 1/11/23), 355 So. 3d 1165, *writ denied*, 23-00200 (La. 12/5/23), 373 So. 3d 713. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. *Id.*

After a review, we conclude that the defendant's claims regarding his claims for ineffective assistance of counsel do not meet the burden as set

forth in *Strickland*, *supra*, and are better suited for an evidentiary hearing before a trial court in a post-conviction relief hearing.  Accordingly, we do not consider the defendant's assignments of error and relegate the argument regarding effective assistance of counsel to post-conviction relief.

## CONCLUSION

For the reasons stated herein, Masters' conviction and sentence are affirmed.

**AFFIRMED.**